UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

MICHELLE M. CHARPENTIER,

     Plaintiff,

v.                                             Case No: 6:15-cv-948-Orl-JSS

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____/

## ORDER

     Plaintiff, Michelle M. Charpentier, seeks judicial review of the denial of her claims for a period of disability, disability insurance benefits, and supplemental security income. As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, the decision is affirmed.

## BACKGROUND

### A.    Procedural Background

     Plaintiff filed an application for disability insurance benefits on April 18, 2011 (Tr. 225–226) and an application for supplemental security income on May 12, 2011. (Tr. 227–232.) The Commissioner denied Plaintiff's claims both initially and upon reconsideration. (Tr. 153–163, 170–179.) Plaintiff then requested an administrative hearing. (Tr. 180.) Upon Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified. (Tr. 91–105.) Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and, accordingly, denied Plaintiff's claims for benefits. (Tr. 71–90.) Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied. (Tr. 9–15, 70.) Plaintiff then timely filed

a complaint with this Court.  (Dkt. 1.)  The case is now ripe for review under 42 U.S.C. §§ 405(g) and 1383(c)(3).

**B.      Factual Background and the ALJ's Decision**

Plaintiff, who was born in 1967, claimed disability beginning on May 1, 2009.  (Tr. 95, 225, 227.)  Plaintiff has a high school education and additional technical training in child care.  (Tr. 95.)  Plaintiff has past relevant work experience as a cafeteria attendant and childcare worker.  (Tr. 83.)  Plaintiff alleged disability due to cognitive impairment, depression, anxiety, and high blood pressure.  (Tr. 254.)

In rendering the decision, the ALJ concluded that Plaintiff had not performed substantial gainful activity since May 1, 2009, the alleged onset date.  (Tr. 76.)  After conducting a hearing and reviewing the evidence of record, the ALJ determined that Plaintiff had the severe impairment of affective disorder.  (Tr. 76.)  The ALJ concluded that Plaintiff's impairment of hypertension is non-severe and her cognitive impairment is "not medically determinable," although the ALJ stated that he considered "any alleged decrease in mental functioning in relation to the claimant's affective disorder."  (Tr. 76–77.)  Notwithstanding the noted impairments, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 77–79.)

The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but with the following non-exertional limitations: capable of following simple tasks with no more than five steps that can be learned through simple, on-the-job training through thirty days of training and performed alone at an independent workstation, and doing work that requires no more than occasional interaction with co-workers and supervisors and no interaction with the general public beyond superficial

interaction.  (Tr. 80.)  In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not fully credible.  (Tr. 82.)

Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), however, the ALJ determined that Plaintiff could not perform her past relevant work.  (Tr. 83.)  Given Plaintiff's background and RFC, the VE testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as a scaling machine operator, ironer operator, or tagger.  (Tr. 84.)  Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled.  (Tr. 85.)

## APPLICABLE STANDARDS

To be entitled to benefits, a claimant must be disabled, meaning that the claimant must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect.  These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled.  20 C.F.R. § 416.920.  If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary.

20 C.F.R. § 416.920(a).   Under this process, the ALJ must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment, i.e., one that significantly limits the ability to perform work-related functions; (3) whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1; and, (4) whether the claimant can perform his or her past relevant work.  If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of the claimant's age, education, and work experience.  20 C.F.R. § 416.920(a).  A claimant is entitled to benefits only if unable to perform other work.  *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); 20 C.F.R. § 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards.  *See* 42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).  While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions.  *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In reviewing the Commissioner's decision, the court may not decide the facts anew, re-weigh the evidence, or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision.  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis,

mandates reversal.  *Keeton*, 21 F.3d at 1066.  The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied.  42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

## ANALYSIS

Plaintiff challenges the ALJ's decision on the following grounds: (1) the ALJ erred in determining Plaintiff's RFC by failing to adequately consider and weigh certain medical opinions; (2) the Commissioner failed to consider evidence presented to the Appeals Council; (3) the ALJ erred in relying on the testimony of the VE after posing an incomplete hypothetical; and (4) the ALJ erred in determining Plaintiff's credibility.  For the reasons that follow, these contentions do not warrant reversal.

**A.     Opinion Evidence**

Plaintiff argues that the ALJ's RFC was erroneous because the ALJ failed to adequately consider all pertinent record evidence.  (Dkt. 28 at 13.)  Specifically, Plaintiff argues that the ALJ did not properly evaluate the opinions of consultative examining physician Dr. Kamir Marrero, treating physician Dr. Ralph Ballentine, and state agency consultants, and failed to consider treatment notes of Dr. Valerie Westhead, who treated Plaintiff after the ALJ's decision was rendered.  (Dkt. 28 at 13–19.)

**1.     Dr. Marrero**

Plaintiff argues that the ALJ erred in her evaluation of Dr. Marrero's opinions.  (Dkt. 28 at 15.)  Dr. Marrero examined Plaintiff in July 2011 as part of Plaintiff's application for disability benefits upon referral from the Division of Disability Determinations.  (Tr. 733–735.)  Dr. Marrero observed that Plaintiff was driven to the examination by her mother, but that Plaintiff possess a

driver's license, which Dr. Marrero learned from Plaintiff.  (Tr. 733.)  In the report, Dr. Marrero stated that he reviewed Plaintiff's records from Seminole Behavioral Healthcare (Tr. 733), which is where Plaintiff was treated, by among other treatment providers, Dr. Ballentine.

In his notes as to Plaintiff's medical history, Dr. Marrero stated that "claimant presents reporting a history of depressive and anxiety symptoms."  (Tr. 733.)  Further, Plaintiff reported the following symptoms: weight loss, problems with sleep, depressed mood, guilt, concentration problems, mood swings, anxiety, restlessness, irritability, hearing "somebody calling her name or children giggling," and repetitive behaviors.  (Tr. 733.)  Further, Plaintiff reported a history of suicide attempts and self-harming behaviors.  (Tr. 733.)  Plaintiff also reported being hospitalized for drinking and mental health problems and being treated at Seminole Behavioral Healthcare by Dr. Ballentine.  (Tr. 733.)  Plaintiff reported last working in 2009 as a cashier and that she worked for the same employer for twelve years before being fired.  (Tr. 734.)  She told Dr. Marrero that she has since attempted to find employment without success.  (Tr. 734.)  As to Plaintiff's daily activities, Dr. Marrero found that Plaintiff can bathe, dress, and groom herself independently and can help with cooking and cleaning.  (Tr. 734.)  Plaintiff "reported that she has no friends outside of the immediate family," and "reported a good relationship with her family."  (Tr. 734.)  Further, Plaintiff told Dr. Marrero that she has no hobbies.  (Tr. 734.)

In his mental status examination, Dr. Marrero found Plaintiff's clothing "neat and clean" and her grooming normal.  (Tr. 734.)  Dr. Marrero found Plaintiff to be "cooperative although irritable at times," her affect to be anxious, her mood consistent, her speech to be normal and clearly articulated, her thought and memory processes normal, her thought content consistent with her mood and circumstances, her attention and concentration "fair to poor," her intelligence to "be

within the average range," her judgment to be "fair," and her insight to be "good."  (Tr. 734.)  Dr.

Marrero stated that Plaintiff "completed all mental control tasks without any mistakes."  (Tr. 734.)

Dr. Marrero concluded, "[b]ased on the records, self report and clinical observations," that

Plaintiff had the following diagnoses: generalized anxiety disorder, major depressive disorder,

which was "recurrent" and "moderate," and alcohol dependence, although Plaintiff was in

remission.  (Tr. 735.)  He recommended psychiatric and psychological services and medical care.

(Tr. 735.)  As to Plaintiff's functional ability, Dr. Marrero found Plaintiff's social functioning to

be "impaired based on her report of a lack of close peer relationships" and her "functional ability"

to be "moderately to severely impaired" because of Plaintiff's "symptomatology."  (Tr. 735.)  Dr.

Marrero concluded that Plaintiff's prognosis was "[g]ood with treatment."  (Tr. 735.)

The ALJ considered Dr. Marrero's opinions that Plaintiff's social functioning was impaired

and her functional ability was moderately to severely impaired.  (Tr. 83.)  The ALJ accorded these

opinions little weight because "Dr. Marrero appeared to rely too heavily upon the claimant's

reported symptoms rather than considering the findings on the mental status examination" and

because his opinions were "inconsistent with the claimant's own reports of activities and her

adequate functioning at Sedona House."  (Tr. 83.)

First, in evaluating the weight to accord medical opinions, an ALJ considers the examining

relationship, the treatment relationship, the length of the treatment relationship, the frequency of

examination, the nature and extent of the treatment relationship, and the record's support of and

consistency with the opinions.  20 C.F.R. § 404.1527(c).  Consultative examiners' opinions are

not entitled to the deference normally given treating sources because they are not treating

physicians.  *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987) (finding that opinions of

consultative examining physicians "are not entitled to deference because as one-time examiners

they were not treating physicians"); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160–1161 (11th Cir. 2004) ("The ALJ correctly found that, because [a consultative examiner] examined [claimant] on only one occasion, her opinion was not entitled to great weight."); 20 C.F.R. § 404.1527(c)(2) (explaining that treating sources are given greater weight because their opinions "may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations").  Dr. Marrero was not a treating physician, but instead examined Plaintiff on one occasion to provide opinions as to Plaintiff's disability application. Thus, contrary to Plaintiff's contention, Dr. Marrero's opinions were not entitled to deference by the ALJ.

Even though the ALJ was not required to afford Dr. Marrero's opinions significant weight, the ALJ nonetheless sufficiently explained why he gave Dr. Marrero's opinions little weight.  The ALJ did not err in discrediting Dr. Marrero's opinions because they were based on Plaintiff's subjective complaints.  *Hoffman v. Astrue*, 259 F. App'x 213, 218 (11th Cir. 2007) (finding the ALJ's discrediting medical opinions proper because the opinions were based on Plaintiff's subjective complaints as to her mental impairments and were inconsistent with the record); *Majkut v. Comm'r of Soc. Sec.*, 394 F. App'x 660, 664 (11th Cir. 2010) (affirming an ALJ's giving less weight to a treating physician's opinions where the opinions were "based on [claimant's] subjective complaints" of symptoms of mental and psychological impairments); *Soroka v. Astrue*, No. 8:08-CV-1423-T-TBM, 2009 WL 2424563, at *5 (M.D. Fla. Aug. 5, 2009) (affirming the ALJ's discrediting a physician's opinions in part because the opinions relied "'quite heavily'" on the subjective complaints of the Plaintiff").

Review of Dr. Marrero's opinions show that the ALJ's decision was based on substantial evidence.  Specifically, Dr. Marrero's opinion that Plaintiff's social functioning is impaired was "based on [Plaintiff's] report of a lack of close peer relationships" because Plaintiff "reported that she has no friends outside of the immediate family." (Tr. 734, 735.)  Thus, Dr. Marrero did not state that this opinion was based on his mental status examination or Plaintiff's medical records, rather he stated they were based on Plaintiff's subjective reports.  Further, Dr. Marrero's finding that Plaintiff's functional ability was "moderately to severely impaired" was based on Plaintiff's "symptomatology," but Dr. Marrero's notes regarding Plaintiff's symptoms are based upon Plaintiff's reports. (Tr. 733.)  As noted above, Dr. Marrero's findings as to Plaintiff's present illness include Plaintiff's "*reporting* a history of depressive and anxiety symptoms," and "*reports*" of weight loss, sleep problems, guilt, concentration problems, mood swings, anxiety, restlessness, etc. (Tr. 733) (emphasis added.)  In sum, although Dr. Marrero stated that he reviewed Plaintiff's records from Seminole Behavioral Healthcare and administered a mental status examination (Tr. 733, 734), Dr. Marrero did *not* state that he relied on Plaintiff's medical records or his examination in his opinions as to Plaintiff's social functioning and functional ability, but instead stated that he based these opinions on Plaintiff's reports regarding her social functioning and symptoms. Therefore, Dr. Marrero's report shows that the opinions of Dr. Marrero that the ALJ discredited, i.e. Plaintiff's social and functional limitations, were based on Plaintiff's subjective complaints. Thus, the ALJ's reasoning for discrediting these findings comports with and is supported by the record.

Further, the ALJ found Dr. Marrero's opinions as to Plaintiff's social and functional abilities entitled to little weight because they did not reflect Dr. Marrero's findings on his mental status examination of Plaintiff. (Tr. 83.)  The ALJ's reasoning is supported by the record because

Dr. Marrero's notes from his mental status examination show that although Plaintiff was exhibiting symptoms of anxiety, Dr. Marrero's findings do not evidence the limitations he found and Dr. Marrero noted that Plaintiff "completed all mental control tasks without any mistakes." (Tr. 734.) As discussed above, Dr. Marrero found Plaintiff "neat and clean," with normal grooming. (Tr. 734.) Dr. Marrero noted that Plaintiff was "cooperative although irritable at times," during the examination, her mood was consistent, and her affect was anxious. (Tr. 734.) Dr. Marrero found Plaintiff's speech and thought and memory processes normal, and her thought content to be consistent with her mood and circumstances. (Tr. 734.) Finally, Dr. Marrero found her attention and concentration "fair to poor," her insight "good," her judgment "fair," and her intelligence "within the average range." (Tr. 734.) Thus, although Dr. Marrero's mental status examination showed that Plaintiff had an anxious affect, his findings otherwise did not support his opinions as to Plaintiff's social and functional abilities. The ALJ's decision that Dr. Marrero's opinions are not based on his mental status examination findings is supported by the record.

Finally, the ALJ's finding that Plaintiff's testimony regarding her daily activities and functioning at the Sedona House contradicted Dr. Marrero's opinions is supported by substantial evidence. Specifically, Plaintiff testified that she "go[es] to Sedona to socialize, make friends, do certain projects" three days a week for about five and a half hours per day. (Tr. 97–98.) In Plaintiff's brief, Plaintiff explained that the Sedona House is a sheltered workshop that allows adults with mental illness to operate the clubhouse as part of their treatment. (Dkt. 28 at 15.) Progress notes from the Sedona House show that Plaintiff worked as a reception and greeter on a regular schedule. (Tr. 710, 712, 714, 716, 719, 722, 724, 726, 727, 729–730, 764, 765, 766, 797, 807, 941–844.) As the ALJ found, Plaintiff's progress notes from the Sedona House show that Plaintiff "developed a leadership role with other clients" and that "[w]hile there were notations of

some reserve and resistance to suggestions of increasing her social interaction, the claimant continued to be viewed as pleasant, humorous, polite, and responsive." (Tr. 78, 712, 722, 724, 726.) Plaintiff further testified that she has a driver's license and drives to the grocery store, pharmacy, and the mall, and to meet the bus that takes her to Sedona House. (Tr. 98.) As to household chores, Plaintiff testified that she does laundry, cleans her room, and microwaves food. (Tr. 98.) Finally, Plaintiff testified that she goes out with her mother, helps her mother shop, and goes out to lunch, although not often. (Tr. 100.)

Therefore, Plaintiff's contention does not warrant reversal because Dr. Marrero's opinions were not entitled to significant weight because he is not Plaintiff's treating physician and, nonetheless, the ALJ adequately described his reasoning for affording Dr. Marrero's opinions little weight, which was supported by substantial evidence.

### 2.      Dr. Ballentine

Next, Plaintiff contends that the ALJ erred by not articulating good cause for discounting the opinions of Dr. Ballentine, Plaintiff's treating physician. (Dkt. 28 at 15–17.) In September 2011, Dr. Ballentine prepared a medical assessment of Plaintiff's mental ability to do work-related activities. (Tr. 756–758.) Dr. Ballentine found that Plaintiff's ability to deal with the public was "fair," meaning "seriously limited, but not precluded." (Tr. 756.) Further, Dr. Ballentine found that Plaintiff had "poor" to no abilities, meaning "[n]o useful ability to function in this area," with the following: following work rules, relating to co-workers, using judgment, interacting with supervisors, dealing with work stresses, functioning independently, and maintaining attention and concentration. (Tr. 756.) However, Dr. Ballentine found that Plaintiff's ability to understand, remember, and carry out simple job instructions was fair, but that Plaintiff had poor to no ability to understand, remember, and carry out complex jobs instructions or detailed (but not complex),

job instructions.  (Tr. 757.)  As support for these findings, Dr. Ballentine stated that, while at the Sedona House, Plaintiff "tends to stay in comfort zone and get very anxious in new situations" and has "difficulties . . . concentrating and following instructions."  (Tr. 757.)  Finally, Dr. Ballentine found that Plaintiff's ability to maintain her personal appearance, behave in an emotionally stable manner, and demonstrate reliability was fair, although she had poor to no ability to relate predictably in social situations.  (Tr. 757.)  As far as the medical or clinical findings supporting this assessment, Dr. Ballentine stated "socially awkward."  (Tr. 758.)

The ALJ stated that he considered Dr. Ballentine's assessment, but found Dr. Ballentine's findings that Plaintiff had "poor to no ability in most of the categories of work-related activities" inconsistent with Plaintiff's "rather successful performance of duties at Sedona House and Dr. Ballentine's own findings on mental status examination."  (Tr. 83.)  Therefore, finding Dr. Ballentine's opinions "inconsistent with the objective records," the ALJ accorded them little weight.  (Tr. 83.)  Plaintiff argues that Dr. Ballentine's treatment records show that Plaintiff "had significant issues" and thus the ALJ did not articulate good cause for discounting Dr. Ballentine's opinions.  (Dkt. 28 at 16.)

An ALJ must afford the opinions of a treating physician substantial or considerable weight unless "good cause" is shown to the contrary.  *Phillips v. Barnhart*, 357 F.3d 1232, 1240–1241 (11th Cir. 2004).  An ALJ's failure "to clearly articulate the reasons for giving less weight to the opinion of a treating physician" is reversible error.  *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).  Good cause for giving a treating physician's opinion less weight "exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records."  *Phillips*, 357 F.3d at 1240–1241.

- 12 -

Contrary to Plaintiff's assertion, the ALJ identified good cause for discounting Dr. Ballentine's opinions. Specifically, the ALJ's decision is supported by objective medical evidence, the evidence of Plaintiff's participation at Sedona House, and Dr. Ballentine's own treatment records. First, the ALJ noted that Plaintiff's mental findings throughout the record showed that Plaintiff "appears to remain stable on medications" and do not show "any severity of psychiatric symptoms." (Tr. 81.) This finding is supported by substantial evidence. In treatment notes from Plaintiff's examinations, Plaintiff was found to be alert, oriented, clean, and cooperative, with intact judgment and insight and good eye contact. (Tr. 522, 528, 552–555, 559, 561, 562, 566, 575, 584, 593, 622, 638, 649, 660, 759, 778, 850.)

Second, as set forth above (*see* discussion *supra* Section A(1)), progress notes from the Sedona House show that Plaintiff worked as a reception and greeter on a regular basis. (Tr. 710, 712, 714, 716, 719, 722, 724, 726, 727, 729–730, 764, 765, 766, 797, 807, 941–844.) The ALJ specifically limited Plaintiff's RFC to work at an independent workstation because there was evidence of Plaintiff's "self-isolative" behaviors, including progress notes from Plaintiff's work at the Sedona House noting Plaintiff's "reserve with others." (Tr. 82.) The ALJ's decision to discount Dr. Ballentine's opinions is supported by progress notes from the Sedona House, which show that Plaintiff would isolate herself and "enjoyed keeping a low profile" (Tr. 710, 722, 803), but also that she was "sociable and humorous," "responded well to staff interaction," "was courteous on the phone but offered little interaction with others," "participated fairly well [in all unit meetings], demonstrating a sarcastic sense of humor which made others laugh," and "often assumed a leadership role by leading discussions" in group meetings. (Tr. 710, 712, 719, 722.) Thus, Plaintiff's performance at the Sedona House contradicts Dr. Ballentine's findings that Plaintiff has poor to no ability in many work-related situations.

Finally, Dr. Ballentine's own treatment records do not support his opinions because although they show that Plaintiff experienced difficulties, including depressive and anxious symptoms, and psychotic symptoms at times, he generally found Plaintiff to be alert and logical and treated her symptoms with medication.  (Tr. 559, 561, 562, 563, 569, 738, 759.)  In June 2009 treatment notes, Dr. Ballentine found Plaintiff alert and oriented, with concrete and logical thought processes.  (Tr. 559.)  Although Dr. Ballentine found Plaintiff to be "rambling," she had no paranoia, suicidal or homicidal ideation, or hallucinations.  (Tr. 560.)  In treatment notes a couple of weeks later, in June 2009, Dr. Ballentine stated that Plaintiff reported hearing voices, although she did not exhibit paranoid behaviors during her examination.  (Tr. 561.)  In July 2009, Dr. Ballentine noted that Plaintiff's sleep problems were not improving and that Plaintiff still experienced anxiety, but found her speech, cognitive function, alertness, and orientation "within normal limits."  (Tr. 562.)  Although he noted "a history of auditory hallucinations," he found that Plaintiff's thoughts were concrete and logical and that Plaintiff had no overt paranoid behaviors. (Tr. 562.)  Two weeks later, Dr. Ballentine examined Plaintiff who reported "doing better," including improved sleep and more motivation "to do things."  (Tr. 563.)

In August 2009, Plaintiff reported improvements with a reduction in one of her medications, although she was having trouble sleeping and experiencing dizziness.  (Tr. 580.)  In the September 2009, Plaintiff reported increased feelings of depression, anxiety, helplessness, and lack of motivation.  (Tr. 589.)  In November 2009, Plaintiff reported having a "stable" mood, sleeping well, and working at the Sedona House.  (Tr. 605.)  In February 2010, Plaintiff reported not liking the Sedona House because it was "boring" because "[s]he can do in five minutes for, what they asked her to do all day."  (Tr. 611.)  In March 2010, Plaintiff reported doing "a little bit better," although she continued having problems with depression and reported that she did not like

going to the Sedona House.  (Tr. 618.)  In April 2010, Plaintiff reported feeling "less depressed," and that she had been going to the Sedona House three days a week and was "physically active around the house," although "spending a lot of time in bed."  (Tr. 627.)  In May 2010 treatment notes, Plaintiff reported hearing "a voice calling her names three times in the last month."  (Tr. 634.)  In September 2010, Dr. Ballentine noted that Plaintiff still has "some mood swings and low motivation" and had "some increased paranoia at home," although her cognitive functioning and thoughts at the time of the examination were noted to be normal.  (Tr. 648–649.)  In December 2010, Plaintiff reported that she was "doing well with the medication" and was still attending the Sedona House, which Plaintiff found "supportive."  (Tr. 654.)

In February 2011, Plaintiff reported difficulties with anxiety and memory.  (Tr. 660.)  Dr. Ballentine administered a mental status examination that had "fairly normal" results and showed that her short-term memory was intact.  (Tr. 660.)  In March 2011, Plaintiff reported feeling less anxious, manic, and depressed, although reported feeling angry.  (Tr. 666.)  In April 2011, Dr. Ballentine found Plaintiff to have regressed, "acting more childlike," and having no motivation or initiative.  (Tr. 672.)  A week later, Plaintiff reported having more energy and that she was continuing to go to the Sedona House, although she "doesn't have much interest."  (Tr. 678.)  In June 2011, Plaintiff reported that adjustments to her medications made her feel more energetic, but interfered with her sleep.  (Tr. 693.)  In July 2011, Plaintiff reported sleeping better, but felt more moody and irritable and heard "a voice call her name."  (Tr. 738, 744.)  In August 2011, Plaintiff reported "doing well with the medications," although she was worrying about the recent denial of her Social Security applications.  (Tr. 750.)  October 2011 treatment notes state that Plaintiff experienced lightheadedness and dizziness, but "apparently has been functioning well at Sedona house and with[] friends."  (Tr. 767.)

January 2012 treatment notes state that Plaintiff's increase in a depression medication "has helped some," although Plaintiff was feeling distress regarding her father's upcoming surgery and her Social Security hearing.  (Tr. 774.)  In March 2012, Plaintiff reported experiencing more depression and forgetfulness.  (Tr. 781.)  In May, August, and September 2012, Plaintiff reported that her symptoms were treated well with an adjustment to her medications.  (Tr. 817, 829, 835, 846.)  Thus, overall, although Dr. Ballentine's treatment notes demonstrate Plaintiff's difficulties with psychological symptoms, they also demonstrate that Dr. Ballentine helped Plaintiff manage these symptoms with medication and that Plaintiff was able to function at the Sedona House.  Dr. Ballentine's findings that Plaintiff has poor to no ability to relate to co-workers, deal with the public, and interact with supervisors are contradicted by his treatment notes in which he noted Plaintiff's reports that her duties at the Sedona House were not challenging enough because "[s]he can do in five minutes for, what they asked her to do all day" and that she found the Sedona House "supportive."  (Tr. 611, 654.)  Therefore, although Dr. Ballentine's treatment records reveal the mental difficulties Plaintiff experienced, the ALJ's decision that they do not support Dr. Ballentine's findings of Plaintiff's total inability to work is supported by substantial evidence. Accordingly, Plaintiff's contention as to Dr. Ballentine does not warrant reversal.

### 3.      State Agency Psychological Consultants

Plaintiff next argues that the ALJ erred by according "great weight" to the opinions of state agency consultants dated July and October 2011.  (Dkt. 28 at 18–19.)  Specifically, Plaintiff contends that there was "a significant amount of evidence in the record dated after those opinions were provided, and, therefore, those opinions should not have been given great weight."  (Dkt. 28 at 18–19.)  Further, Plaintiff argues that non-examining physicians' opinions are entitled to little

weight and their opinions, "taken alone," do not constitute substantial evidence to support the ALJ's decision.  (Dkt. 28 at 19.)

On July 19, 2011, Dr. Sanford Golin assessed Plaintiff's mental RFC.  (Tr. 112–114.)  Dr. Golin found that Plaintiff has understanding and memory limitations, but found that Plaintiff "is able to understand and recall instructions for simple tasks" and has "moderate difficulty sustaining attention to detailed tasks but is able to concentrate sufficiently well to persist in carrying out simple tasks."  (Tr. 113.)  Further, Dr. Golin found that Plaintiff does not have social interaction limitations or adaption limitations.  (Tr. 113.)  On September 28, 2011, Dr. James Meyers assessed Plaintiff's mental RFC.  (Tr. 136–138.)  Like Dr. Golin, Dr. Meyers found that Plaintiff "is able to understand and recall instructions for simple tasks" and has "moderate difficulty [] sustaining attention to detailed tasks but is able to concentrate sufficiently well to persist in carrying out simple tasks."  (Tr. 137.)  Dr. Meyers concluded that Plaintiff "retains the ability to perform simple, repetitive tasks and likely has abilities to perform tasks at higher levels in spite of the moderate limitations noted above" and Plaintiff "is able to meet the basic mental demands of work on a sustained basis despite any limitations."  (Tr. 137.)  Finally, Dr. Meyers determined that Plaintiff has no social interaction or adaptation limitations.  (Tr. 137.)

The ALJ considered the opinions of Dr. Golin and Dr. Meyers and stated that they "opined the claimant could concentrate sufficiently to persist in carrying out simple tasks."  (Tr. 83.)  The ALJ accorded these opinions "great weight" because they were supported by and consistent with Plaintiff's "own reports of activities, her ability to maintain a schedule and perform the job of greeter/receptionist at Sedona House" and findings in other mental status examinations, which reveal "no reports of any severity of psychiatric symptoms."  (Tr. 81, 83.)

Although ALJs "are not bound by any findings made by State agency medical or psychological consultants," the opinions of state agency consultants "are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation."  20 C.F.R. § 404.1527(e)(2)(i); *Luterman v. Comm'r of Soc. Sec.*, 518 F. App'x 683, 689 (11th Cir. 2013) ("The ALJ also must consider any findings of a state agency medical or psychological consultant, who is considered an expert, and must assign weight and give explanations for assigning weight the same way as with any other medical source.").  "The opinions of nonexamining, reviewing physicians . . . when contrary to those of the examining physicians, are entitled to little weight, and standing alone do not constitute substantial evidence." *Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987).

Plaintiff does not contend that the opinions of Dr. Golin and Dr. Meyers are contrary to opinions of treating physicians and thus should be accorded little weight.  While Dr. Golin's and Dr. Meyers's opinions regarding Plaintiff's work-related limitations are less severe than Dr. Ballentine's opinions, the ALJ's reasoning for discounting Dr. Ballentine's conclusions that Plaintiff had poor to no ability with work-related functioning was supported by substantial evidence.  *See* discussion *supra* Section A(2).  Thus, the ALJ did not err in crediting the opinions of Dr. Golin and Dr. Meyer, non-treating sources, over Dr. Ballentine's opinions.  *Forrester v. Comm'r of Soc. Sec.*, 455 F. App'x 899, 902 (11th Cir. 2012) (holding that "the ALJ did not err by crediting the opinions of non-treating sources over those of the treating physician" because good cause was shown to discredit the treating physician's opinions).

Nor does Plaintiff identify evidence dated after their opinions that conflict with their opinions to support her argument that there is "a significant amount" of record evidence after their opinions were rendered.  To the contrary, "[t]he ALJ arrived at his decision after considering the

record in its entirety and did not rely solely on the opinion of the state agency physicians." *Ogranaja v. Comm'r of Soc. Sec.*, 186 F. App'x 848, 851 (11th Cir. 2006).  As the ALJ found, Dr. Golin's and Dr. Meyers's opinions were consistent with Plaintiff's testimony regarding her daily activities and were consistent with findings in other mental examinations.  As set forth above (*see supra* Sections A(1)–(2)), the ALJ's decision to accord the opinions of state agency consultants great weight is supported by substantial evidence because the opinions were consistent with Plaintiff's testimony regarding her daily activities, her participation at the Sedona House, and treatment records finding that although Plaintiff had mental difficulties, her mental status was largely normal.  Accordingly, "the expert opinions of the non-examining state agency physicians were supported by and consistent with the record as a whole" and, thus, "substantial evidence supports the ALJ's decision to assign great weight to those opinions."  *Ogranaja*, 186 F. App'x at 851.

### 4.    Dr. Westhead

Finally, Plaintiff contends that the ALJ erred by failing to consider March 2013 treatment notes from Dr. Westhead.  (Dkt.  28 at 17–18.)  Dr. Westhead is Plaintiff's treating physician who performed a psychiatric evaluation of Plaintiff on March 6, 2013 (Tr. 897–900), over two months after the ALJ rendered her decision on December 20, 2012.  (Tr. 85.)  Dr. Westhead noted that Plaintiff reported having depression, anxiety, insomnia, and fluctuations in her appetite, but that Plaintiff has "shown some improvement with her current medication."  (Tr. 897, 899.)  Dr. Westhead found Plaintiff "[p]leasant and cooperative with low cognitive functioning."  (Tr. 898.)  Her mood was "mildly anxious" and her answers and affect were appropriate and her concentration, insight, judgment were adequate.  (Tr. 898.)  Dr. Westhead found that Plaintiff had major depression, alcohol dependence, and cognitive disorder and a global assessment of

functioning score of thirty.  (Tr. 899, 900.)  Dr. Westhead concluded that Plaintiff was "currently stable but needs ongoing monitoring to assess her for medication adjustments."  (Tr. 900.)

Plaintiff's contention that the ALJ failed to consider Dr. Westhead's opinions is without merit because Dr. Westhead's opinions were not before the ALJ.  Plaintiff was not examined by Dr. Westhead until March 6, 2013, over two months after the ALJ rendered her decision on December 20, 2012.  (See Tr. 85, 900.)  Rather, Plaintiff submitted Dr. Westhead's opinions after the ALJ rendered her decision as part of Plaintiff's appeal to the Appeals Council.  (Tr. 9–15.)  On review, the Appeals Council found no reason to review the ALJ's decision, finding that the newly submitted evidence did not provide a basis for changing the ALJ's decision.  (Tr. 9–10.)  *See Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 783–85 (11th Cir. 2014) (providing that the Appeals Council is not required to provide a detailed explanation of a claimant's new evidence when it denies a petition for review and that it is sufficient for the Appeals Council to simply state that it considered the additional evidence but that "the information did not provide a basis for changing the ALJ's decision").  As the Commissioner argues (Dkt. 31 at 12), Plaintiff, however, does not argue that the Appeals Council erred in its consideration of Dr. Westhead's opinions.[1] Further, "when the AC [Appeals Council] has denied review, [the reviewing court] will look only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence." *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998); *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1266 (11th Cir. 2007) ("[W]hen a claimant challenges the administrative law judge's decision to deny benefits, but not the decision of the Appeals Council to deny review of the administrative law judge, we need not consider evidence

---

[1] Plaintiff argues that the Appeal Council erred by not considering newly-submitted evidence from Dr. Dano Leli, not Dr. Whitehead (Dkt. 28 at 19–22), which the Court addresses in Plaintiff's second argument on appeal.  *See* discussion *infra* Section B.

submitted to the Appeals Council."). Therefore, Plaintiff's argument that the ALJ failed to consider and assign weight to an opinion that was not before the ALJ is without merit.

## B.    Appeals Council

Next, Plaintiff argues that the Appeals Council erred in its consideration of Dr. Dano Leli's psychological evaluation report dated June 1, 2013. (Dkt. 28 at 19–22.) The Appeals Council denied Plaintiff's request for review of the ALJ's decision. (Tr. 9–15.) In its notice of its denial of Plaintiff's request for review, the Appeals Council stated that it "looked at" Dr. Leli's report, but found that this information post-dated the ALJ's December 20, 2012 decision and, thus, "[t]his new information is about a later time" and "does not affect the decision about whether you were disabled beginning on or before December 20, 2012." (Tr. 10.) Plaintiff contends that the Appeals Council was required to consider Dr. Leli's report because it related "to the period on or before the date" of the ALJ's decision. (Dkt. 28 at 20.)

If a claimant presents evidence after the ALJ's decision, the Appeals Council must consider it if it is new, material, and chronologically relevant. *Beavers v. Soc. Sec. Admin., Comm'r*, 601 F. App'x 818, 821 (11th Cir. 2015); 20 C.F.R. § 404.970(b). Chronologically relevant evidence is evidence that relates to the period on or before the date of the ALJ's hearing decision. *Flowers v. Comm'r of Soc. Sec.*, 441 F. App'x 735, 745 (11th Cir. 2011) (citing 20 C.F.R. § 404.970(b)). Evidence relating to a period after the date of the ALJ's hearing decision is irrelevant as review is limited to "the decision of the ALJ as to whether the claimant was entitled to benefits during a specific period of time, which period was necessarily prior to the date of the ALJ's decision." *Wilson v. Apfel*, 179 F.3d 1276, 1279 (11th Cir. 1999).

New evidence must not be cumulative of other evidence in the record. *See Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986); *Beavers*, 601 F. App'x at 823 (holding that the Appeals

Council did not err in its review of new evidence because "[t]he new evidence is either cumulative of, or consistent with, the evidence that was before the ALJ").  The Appeals Council must grant the petition for review if it finds that the ALJ's "action, findings, or conclusion is contrary to the weight of the evidence currently of record." *Ingram*, 496 F.3d at 1261 (internal quotations omitted).  The new evidence is material, and thus warrants a remand, if "there is a reasonable possibility that the new evidence would change the administrative outcome." *Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987).

The Appeals Council is not required to provide a detailed explanation of a claimant's new evidence when it denies a petition for review. *Mitchell*, 771 F.3d at 783–785.  In denying review, it is sufficient for the Appeals Council to simply state that it considered the additional evidence but that "the information did not provide a basis for changing the ALJ's decision." *Id.* at 782.  As such, on appeal, a reviewing court "must consider whether the new evidence renders the denial of benefits erroneous." *Ingram*, 496 F.3d at 1262.  In other words, to obtain a remand from a federal district court under sentence four of 42 U.S.C. § 405(g), "[a] claimant must show that, in light of the new evidence submitted to the Appeals Council, the ALJ's decision to deny benefits is not supported by substantial evidence in the record as a whole." *Timmons v. Comm'r of Soc. Sec.*, 522 F. App'x 897, 902 (11th Cir. 2013).

Plaintiff contends that the Appeals Council's consideration of Dr. Leli's report "may have changed the outcome of the decision" because Dr. Leli determined that Plaintiff does not have the mental capacity to be gainfully employed.  (Dkt. 28 at 20–21.)  Dr. Leli examined Plaintiff in three one-hour diagnostic interviews "together with [Plaintiff's] sister" and reviewed "[a]vailable records."  (Tr. 40.)  Dr. Leli found Plaintiff to be "neatly groomed," friendly, pleasant, engaging, interested, alert, attentive, cooperative, and able to maintain good eye contact.  (Tr. 48.)  Dr. Leli

found Plaintiff's speech pattern articulate, logical, and coherent with no signs of psychosis and her mood was moderately depressed.  (Tr. 48.)  He found her cognitive insight to be "fair to poor," her emotional insight to be poor, and her "interpersonal reasoning, judgment, and planning" to be "marginal to inadequate."  (Tr. 48.)  Dr. Leli concluded that Plaintiff would be unable to live independently and "does not appear to have the neuropsychological and psychological capability to be gainfully employed in either private or public sectors on either a full-time or part-time basis both now and in the foreseeable future."  (Tr. 56.)

Here, the Appeals Council stated that it "looked at" Dr. Leli's report, but did not consider it because it post-dated the ALJ's decision and thus did not affect the ALJ's decision about whether Plaintiff was disabled.  (Tr. 10.)  Contrary to Plaintiff's assertions, the Appeals Council did not err because Dr. Leli's report was neither chronologically relevant nor material.  First, Dr. Leli's report was not chronologically relevant.  The ALJ rendered her decision on December 20, 2012.  (Tr. 85.)  Following the issuance of the ALJ's decision, Plaintiff submitted Dr. Leli's June 2013 report, which was based on his assessments of Plaintiff in the spring of 2013, in support of Plaintiff's request for review by the Appeals Council.  (Tr. 9–15.)  Evidence dated after the ALJ's decision can be chronologically relevant if it relates to a period on or before the date of the ALJ's decision.  20 C.F.R. § 404.970(b).  Although Dr. Leli cited to record evidence pre-dating the ALJ's decision that he reviewed and relied upon (Tr. 41–42), Dr. Leli's report was based on his interviews of Plaintiff, his mental status examination, and his behavioral observations (Tr. 48–54), and his findings are based on the behaviors Plaintiff "exhibited" and symptoms and feelings she reported "currently experiencing" "at the time of the assessment."  (Tr. 51–56.)  Therefore, the Appeals Council did not err in finding Dr. Leli's report to be chronologically irrelevant.

Notwithstanding, Dr. Leli's report is immaterial because, even if Dr. Leli's report was chronologically relevant, it would not render the denial of benefits erroneous or present a reasonable possibility that the administrative outcome would change.  *See Ingram*, 496 F.3d at 1262 (noting that review by a federal district court requires consideration of evidence not initially submitted to the administrative law judge but considered by the Appeals Council in order to determine whether that new evidence renders the denial of benefits erroneous); *Caulder*, 791 F.2d at 877 (stating that "[t]o be material, the evidence must be relevant and probative so that there is a reasonable possibility that it would change the administrative outcome") (internal citations omitted).

When Dr. Leli's report is viewed in conjunction with the Plaintiff's treatment records, the ALJ's decision to deny benefits remains supported by substantial evidence because Dr. Leli's findings do not differ significantly from those considered by the ALJ.  Specifically, Dr. Leli's finding that Plaintiff was friendly, pleasant, engaging, alert, attentive, cooperative, articulate, logical, and coherent (Tr. 48) are consistent with findings of Plaintiff's other physicians in treatment notes (Tr. 522, 528, 552–555, 559, 561, 562, 566, 575, 584, 593, 622, 638, 649, 660, 759, 778, 850).  *Clough v. Soc. Sec. Admin., Comm'r*, 636 F. App'x 496, 498 (11th Cir. 2016) (finding that the Appeals Council did not err because the new evidence contained a physician's "observations of [claimant's] appearance, mood, and mental capabilities [that] were also largely cumulative of the observations made by [a different physician] prior to the ALJ's decision.").

Further, although Dr. Leli found Plaintiff's cognitive insight to be fair to poor, her emotional insight to be poor, and her interpersonal reasoning, judgment and planning to be marginal to inadequate (Tr. 48), Dr. Leli did not support these opinions with citation to objective data from his mental status examination.  *See* 20 C.F.R. § 404.1527(c)(3) ("The more a medical

source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion.").   As stated above, Dr. Leli's findings as to Plaintiff's mental status were that Plaintiff was alert, attentive, oriented, logical, and coherent.  (Tr. 48.)  Finally, Dr. Leli's conclusion that Plaintiff would be unable to be gainfully employed (Tr. 56) is not binding on an ALJ because it is a determination reserved for the Commissioner.  20 C.F.R. § 404.1527(d) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled" as these determinations are reserved to the Commissioner "because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability."); *Miles v. Comm'r Soc. Sec.*, 469 F. App'x 743, 745 (11th Cir. 2012) ("[A] medical source's statement that a claimant is 'unable to work' or 'disabled' does not bind the ALJ, who alone makes the ultimate determination as to disability under the regulations.").  Thus, this conclusion would not change the outcome of the ALJ's decision.

Accordingly, the evidence from Dr. Leli was neither chronologically relevant nor material and did not render the ALJ's decision contrary to the weight of the evidence.  Thus, Plaintiff's contention does not warrant reversal.

## C.    Hypothetical Question to the VE

Plaintiff argues that the ALJ improperly relied on the testimony of the VE after posing a hypothetical question that did not adequately reflect Plaintiff's limitations.  Specifically, Plaintiff argues that the ALJ erred by relying on the VE's "flawed testimony" because the ALJ failed to properly weigh the opinions of physicians, as Plaintiff argued in her first argument on appeal (*see* discussion *supra* Section A).  (Dkt. 28 at 22–23.)

However, Plaintiff does not identify any such limitations that the ALJ allegedly failed to incorporate into his hypothetical. *See Freeman v. Comm'r, Soc. Sec. Admin.*, 593 F. App'x 911, 916 (11th Cir. 2014) (affirming the ALJ's decision because "the hypotheticals posed by the ALJ were consistent with the RFC determination and adequately considered all of [the claimant's] credible limitations"); *Crawford*, 363 F.3d at 1161 ("[T]he ALJ [is] not required to include findings in the hypothetical that the ALJ . . . properly reject[s] as unsupported."). Nor does Plaintiff identify any impairment that the ALJ failed to consider in posing a hypothetical question to the VE. *See Wilson*, 284 F.3d at 1227 (providing that the VE's expert testimony constitutes substantial evidence when the ALJ poses a hypothetical question that comprises all of the claimant's impairments). Finally, as determined above, Plaintiff has failed to establish that the ALJ erred in weighing the opinions of physicians. *See* discussion *supra* Section A. Therefore, Plaintiff's contention does not warrant reversal.

Plaintiff further contends that the ALJ mischaracterized the VE's testimony regarding the number of jobs existing nationally that Plaintiff is capable of performing. (Dkt. 28 at 23.) Specifically, Plaintiff contends that the VE's testimony regarding the number of positions available nationally for scaling machine operators, ironer operators, and taggers "represented all of the occupations in an occupational group of jobs" and thus "there was no way to determine the number of jobs for specific jobs the vocational expert indicated." (Dkt. 28 at 23; Tr. 84, 102–105.)

"[A]n ALJ's finding as to the existence of a sufficient quantity of jobs is a finding of fact reviewed under the substantial evidence standard." *Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 934 (11th Cir. 2015). Thus, a reviewing court cannot "reweigh the evidence or substitute [its] judgment for that of the Secretary." *Id.* Here, the ALJ's decision at step five of the sequential evidence is supported by substantial evidence, i.e. the VE's testimony, and it is not the

role of this Court to re-weigh the evidence supporting the ALJ's decision.  Plaintiff does not contend that the ALJ's alleged mischaracterization of the VE's testimony means that the jobs identified by the ALJ do not exist in significant numbers in the national economy and the Eleventh Circuit "has never held that a minimum numerical count of jobs must be identified in order to constitute work that 'exists in significant numbers' under the statute and regulations." *Id.* (internal quotations omitted).  Accordingly, Plaintiff's contention does not warrant reversal.

**D.     Credibility of Plaintiff's Testimony Regarding Symptoms**

Plaintiff argues that the ALJ erred in finding that Plaintiff's testimony regarding the intensity, persistence, and limiting effects of her symptoms was not entirely credible.  (Dkt. 28 at 23–25.)  Specifically, Plaintiff argues that the ALJ's "boilerplate" credibility statement does not offer sufficient reasoning to support the ALJ's determination that Plaintiff is not fully credible. (Dkt. 28 at 24–25.)

In addition to the objective evidence of record, an ALJ must consider all of the claimant's symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence.  20 C.F.R. § 404.1529(a).  A three-part "pain standard" applies when a claimant attempts to establish disability through his or her own testimony of pain or other subjective symptoms.  *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).  A plaintiff must show: (1) objective medical evidence of an underlying medical condition and either (2) objective medical evidence that substantiates the severity of the pain from the condition or (3) that the objectively determined medical condition is of sufficient severity that it would reasonably be expected to produce the pain alleged.  *Id.*

The ALJ can make credibility determinations regarding a claimant's subjective complaints and must provide specific reasons for the credibility finding.  *Id.*  When the ALJ discredits the

claimant's subjective testimony, the ALJ must articulate explicit and adequate reasons for doing so.  *Foote v. Chater*, 67 F.3d 1553, 1561–1562 (11th Cir. 1995); *see also Holt*, 921 F.2d at 1223 ("[T]he ALJ's discretionary power to determine the credibility of testimony is limited by his obligation to place on the record explicit and adequate reasons for rejecting that testimony.").  A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.  *Foote*, 67 F.3d. at 1562.

When evaluating a claimant's subjective symptoms, the ALJ must consider things such as: (1) the claimant's daily activities; (2) the nature and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) effects of medications; and (5) treatment or measures taken by the claimant for relief of symptoms.  20 C.F.R. § 404.1529(c)(3).  "The credibility determination does not need to cite particular phrases or formulations," but it cannot be "a broad rejection which is not enough to enable" the reviewing court "to conclude that [the ALJ] considered her medical condition as a whole."  *Dyer v. Barnhart*, 395 F.3d 1206, 1210–1211 (11th Cir. 2005) (internal quotations omitted).

A review of the ALJ's decision reflects that the ALJ carefully considered Plaintiff's testimony and provided adequate reasons for finding Plaintiff not entirely credible.  Plaintiff argues that the ALJ made the following "boilerplate" finding regarding Plaintiff's credibility:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

(Tr. 82.)  However, Plaintiff includes only a portion of the ALJ's credibility finding, as the ALJ's analysis did not end there.  Specifically, the ALJ considered Plaintiff's testimony regarding her

activities of daily living and reports from Plaintiff's treating physician and a consultative physician to conclude that Plaintiff's testimony regarding her symptoms were undermined. (Tr. 82.)

First, the ALJ considered Plaintiff's testimony that she has problems with short-term memory, focus, and stress. (Tr. 82, 97.) The ALJ, however, found this testimony to be undermined by Plaintiff's testimony that she continues to drive (Tr. 98), which the ALJ found to be "an activity requiring not only attention and concentration, but also one in which stress is often a factor." (Tr. 82.) Further, the ALJ considered Dr. Ballentine's treatment records, in which Dr. Ballentine noted that Plaintiff complained of short-term memory problems, but recommended to Plaintiff that this problem may be caused by Plaintiff not eating nutritious meals and found, after administering a mental status examination, that Plaintiff's short-term memory was "intact" and that Plaintiff has no "neurological signs." (Tr. 654, 660, 672.) The ALJ also considered Dr. Marrero's findings that Plaintiff's "[m]emory processes appeared normal," and that Plaintiff "completed all mental control tasks without any mistakes" (Tr. 734), concluding that these findings undermined Plaintiff's testimony. (Tr. 82.)

As to Plaintiff's allegation of losing weight due her symptoms of depression and anxiety (Tr. 294, 299), the ALJ found that this claim was undermined by Dr. Ballentine's treatment notes, in which Dr. Ballentine noted that Plaintiff was "frustrated that she only lost a half a pound, say[s] she has been physically active" (Tr. 634), implying, the ALJ found, that Plaintiff "appeared to be losing weight on purpose." (Tr. 82.) The ALJ concluded that Plaintiff's "apparent exaggeration of symptoms again tends to erode her credibility." (Tr. 82.) Thus, based on Plaintiff's testimony of her daily activities and findings of Plaintiff's physicians, the ALJ concluded that while Plaintiff has "some limitations," she is not totally precluding from working and her limitations are accounted for in the ALJ's RFC assessment. (Tr. 82.) Therefore, contrary to Plaintiff's contention,

the ALJ adequately articulated his reasons for finding Plaintiff's testimony as to her symptoms not fully credible and the ALJ's reasons are supported by substantial evidence.  Therefore, Plaintiff's final contention does not warrant reversal.

**CONCLUSION**

Accordingly, after due consideration and for the foregoing reasons, it is

**ORDERED**:

1.      The decision of the Commissioner is **AFFIRMED**.

2.      The Clerk of Court is directed to enter final judgment in favor of the Commissioner and close the case.

**DONE** and **ORDERED** in Tampa, Florida on August 30, 2016.

JULIE S. SNEED
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record